RODNEY A. KERKMAN, APPELLANT, V. WEIDNER WILLIAMS
ROOFING CO., INC., APPELLEE.

547 N.W.2d 152

Filed May 10, 1996. No. S-95-921.

Thomas M. White, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., for appellant.

Michael F. Scahill, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

CAPORALE, FAHRNBRUCH, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

Rodney A. Kerkman appeals an order of dismissal entered by the Workers' Compensation Court. The court found that certain chiropractic treatments received by Kerkman were not reasonable or necessary as a result of 1987 work-related injuries, and it therefore dismissed his petition requesting payment of these expenses by the employer's workers' compensation insurance carrier. Finding sufficient competent evidence in the record to support the Workers' Compensation Court's conclusion, we affirm.

## FACTUAL BACKGROUND

In 1987, Rodney A. Kerkman was injured in two separate automobile accidents while operating a vehicle owned by his employer, Weidner Williams Roofing Co., Inc. (Weidner). As a result of these accidents, he filed a petition in Workers'

Compensation Court in 1989 and was awarded temporary total disability benefits for a period of $4^1/_7$ weeks. Furthermore, the court found that he sustained a 10-percent permanent partial disability. Kerkman was awarded benefits of $235 per week for $4^1/_7$ weeks for his temporary total disability and $25 per week for $295^6/_7$ weeks for his 10-percent permanent partial disability. However, the court denied Kerkman's request for vocational rehabilitation, and Kerkman applied for rehearing on the basis of this denial.

The Workers' Compensation Court panel found on rehearing that Weidner should pay Kerkman temporary total disability benefits of $235 per week for $6^4/_7$ weeks and thereafter $25 per week for $293^3/_7$ weeks for his 10-percent permanent partial disability. Weidner was ordered to pay an outstanding medical expense to a K mart pharmacy. However, the review panel declined to award Kerkman vocational rehabilitation, finding that "the plaintiff has a minimal physical impairment with no requirement for any future surgery or other definitive care."

On May 7, 1992, Kerkman filed another petition in the Workers' Compensation Court alleging that Travelers Insurance Company (Travelers) had repeatedly refused to pay medical bills submitted by him for chiropractic care. Weidner answered, claiming that it had been "unable to determine through various medical providers what relationship, if any, the tendered medical bills have with [Kerkman's] alleged accident and injuries of November 27, 1987 and October 2, 1987." Although Weidner was ordered to pay all medical expenses to date, the trial court found that Kerkman's condition had stabilized and any further chiropractic treatment would be maintenance and not compensable. On review, the Workers' Compensation Court review panel determined that the trial court had used the wrong standard by determining whether the chiropractic care would be maintenance or therapeutic, but concluded that the question of future chiropractic care should be decided when a real dispute was presented with regard to chiropractic treatment.

On July 6, 1994, Kerkman again filed a petition in Workers' Compensation Court claiming that Travelers refused to pay costs for prescriptions and medical treatment, specifically chi-

ropractic care. Weidner argued that the chiropractic bills were not related to the accidents of November 27 and October 2, 1987, and that the treatments were not necessary as a result of Kerkman's 1987 work-related injuries. The trial court found for Weidner by concluding that the chiropractic treatments received by Kerkman were neither reasonable nor necessary as a result of the accidents, and it dismissed Kerkman's petition. The Workers' Compensation Court review panel affirmed upon review. Kerkman appeals.

## ASSIGNMENTS OF ERROR

Summarized, Kerkman's assigned errors are that the court erred (1) by requiring Kerkman as an injured worker to prove that without the care in question he would "be at risk of grave danger or injury" (emphasis omitted) before the care was compensable under Neb. Rev. Stat. § 48-120 (Cum. Supp. 1992); (2) in finding that Kerkman's current symptoms of headache, neck and back pain, stiffness, and increased disability were not caused by the 1987 accidents; (3) in finding that the chiropractic treatments were not reasonable and necessary and were therefore not compensable under § 48-120; and (4) in interpreting Neb. Rev. Stat. § 48-125 (Reissue 1993) to require a finding of a lack of reasonable controversy before attorney fees can be awarded even when medical treatment is the disputed benefit, and if this is a requirement, in finding that a reasonable controversy existed as to Kerkman's right to workers' compensation benefits.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hull v. Aetna Ins. Co.*, 249 Neb. 125, 541 N.W.2d 631 (1996); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636

(1996); *Scott v. Pepsi Cola Co.*, 249 Neb. 60, 541 N.W.2d 49 (1995).

Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995); *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995).

## ANALYSIS

### GRAVE DANGER OR INJURY

Kerkman claims that the Workers' Compensation Court erred by requiring Kerkman to show that without the chiropractic treatments he would be at risk of grave danger or injury. Kerkman argues that the trial court used this standard to determine compensability because it relied upon the opinion of Dr. Kurtis M. Hoppe, who defined the term "medically necessary" as "that without providing that kind of therapy, that I would inflict upon Mr. Kerkman grave danger or injury."

In fact, the trial court relied upon a number of medical experts in arriving at its conclusion. The order of dismissal states:

There is conflicting medical testimony as to *whether said chiropractic treatments were reasonable and necessary as a result of said 1987 injuries as provided in §48-120.* Dr. Rogge opines per Exhibit 8 that "[t]he chiropractic and physiotherapy treatments provided at this office help to maintain Mr. Kerkman's mobility, decrease his pain and speed his return to work, and otherwise these treatments are necessary to help Mr. Kerkman function on a day to day basis." Dr. Curtis [sic] Hoppe examined the plaintiff on May 5, 1994 and opines per Exhibits 16 and 17 that further chiropractic intervention is not medically necessary and a home exercise program consisting of cervical range of motion and stretching is recommended. As set forth in Exhibit 17, Dr. Hoppe opines that "Chiropractic treatment is no longer indicated. In fact, given the patient's continued neck symptomology, previous chiropractic treatment was essentially

inefficacious and probably not medically necessary, except perhaps for a few sessions to treat brief neck pain exacerbations." In addition, Dr. Robert E. Cox, Jr., a chiropractor, reviewed medical and chiropractic records on the plaintiff and opined per Exhibit 13 that "Chiropractic care, at least from the point of Dr. Hoppe's exam, would not be medically/chiropractically reasonable or necessary as a result of the 1987 auto accidents." Dr. Cox further states in his report of November 11, 1994 (Exhibit 13) that further chiropractic care would not relieve pain, hasten or promote the plaintiff's restoration to health or employment as a result of the accidents in 1987. *Having considered all of the evidence submitted by the parties, the Court finds for the defendant on this issue.*"

(Emphasis supplied.)

Obviously, the trial court relied upon more than merely Dr. Hoppe's opinion in arriving at its conclusion. When the record in a workers' compensation case presents conflicting medical testimony, the appellate court will not substitute its judgment for that of the compensation court. *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995). The trial court acknowledges Dr. Deanna J. Rogge's opinion that chiropractic care is reasonable and necessary. Nevertheless, the trial court includes the conclusions of Dr. Robert E. Cox, Jr., that further chiropractic care would be neither reasonable nor necessary as a result of the 1987 accidents and would neither relieve pain nor hasten Kerkman's restoration to health or employment. In fact, the order of dismissal indicates that the trial court properly applied the standard provided in § 48-120 which provides:

The employer shall be liable for all reasonable medical, surgical, and hospital services . . . which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment . . . subject to the approval of and regulation by the Nebraska Workers' Compensation Court, not to exceed the regular charge made for such service in similar cases.

The trial court indicated its use of the standard set forth in § 48-120 at the beginning of the discussion on compensability by stating that "[t]here is conflicting medical testimony as to whether said chiropractic treatments were reasonable and necessary as a result of said 1987 injuries as provided in §48-120." There is no indication that the trial court used Dr. Hoppe's definition of medically necessary in arriving at its conclusion.

We conclude that there is no indication in the trial court's order that Kerkman had to prove that without the chiropractic treatments that he would be at risk of grave danger or injury, and thus, the court did not err by applying an improper standard.

### Reasonable and Necessary

We must now determine whether there is sufficient competent evidence in the record to support the court's finding that the chiropractic treatments were neither reasonable nor necessary as a result of the 1987 accidents. Section 48-120 requires a finding that the medical treatment be "required by the nature of the injury and . . . relieve pain or promote and hasten the employee's restoration to health and employment."

Kerkman cites *Spiker v. John Day Co.*, 201 Neb. 503, 270 N.W.2d 300 (1978), for the proposition that the temporary alleviation of pain alone is sufficient to require a treatment to be covered by the Workers' Compensation Act. We held in *Spiker* and in *S & S LP Gas Co. v. Ramsey*, 201 Neb. 751, 272 N.W.2d 47 (1978), that an employer may be held liable for the care of a totally and permanently disabled employee after the time when maximum cure and rehabilitation have been achieved. However, *Spiker* and *Ramsey* are distinguishable from the facts of the case at bar, as both involved employees who suffered permanent total disability.

Furthermore, in *Spiker* we recognized a number of cases that stated that an employer's liability to furnish reasonable medical and hospital services and medicines ceases when further medical, hospital, and surgical services would not definitely improve the condition of the injured employee. See, *Halbert v. United States F. & G. Co.*, 185 Neb. 775, 178

N.W.2d 781 (1970); *Peek v. Ayres Auto Supply*, 155 Neb. 233, 51 N.W.2d 387 (1952).

As noted in the order of dismissal, Dr. Hoppe opined that "further chiropractic intervention [was] not medically necessary." Furthermore, Dr. Cox stated in his letter dated November 2, 1994, that "[i]n my professional opinion, it can be stated with a reasonable degree of chiropractic certainty, further chiropractic care would not be reasonable and necessary as a result of the 1987 auto accidents." He further states that

> [a]ny lifting, bending, or twisting would most likely aggravate the condition that was caused by the 1987 auto accidents.
>
> There are many missed appointments as the treatment program progressed with Dr. Rogge, and approximately a six month gap in care from 3-19-93 to 10-06-93. This would indicate to me that the patient is able to function without chiropractic intervention.
>
> . . . .
>
> After reviewing Dr. Rogge's daily notes, it is apparent to me that the patient did feel better after receiving Dr. Rogge's treatment program. One visit the patient would feel good, the next visit the patient would be in pain. Some of these visits seem to be very close in proximity. This would indicate to me that after numerous visits to a chiropractor, this care is no longer benefiting the patient. After reviewing the daily notes from Dr. Rogge and the material given to me from Dr. Hoppe, I come to the conclusion that the patient has reached maximal medical improvement in my opinion.

We note that findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995); *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995). Furthermore, in testing the sufficiency of evidence to support findings of fact made by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party.

*Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994); *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994).

Examining Dr. Cox's testimony in the light most favorable to the prevailing party, Weidner, we conclude that it was not clearly erroneous for the Workers' Compensation Court to find that further chiropractic treatment would not hasten Kerkman's restoration to health and employment as required by § 48-120. We conclude that there was sufficient competent evidence in the record for the trial court to find that relieving pain and muscle stiffness would not be considered reasonable and necessary as a result of the 1987 accidents, because it would not improve Kerkman's condition. We therefore determine that there was sufficient competent evidence in the record to support the Workers' Compensation Court's finding that the chiropractic treatments were neither reasonable nor necessary.

### CAUSATION

Kerkman argues that the trial court erred by finding that his current symptoms were not caused by the 1987 accidents. Kerkman claims that because the experts agreed that Kerkman suffered permanent damage in the 1987 accidents which left him vulnerable to episodes of pain, muscle tightness, numbness in his arm and hand, and headaches, therefore, he established causation for the current symptoms. However, the determination of causation is, ordinarily, a matter for the trier of fact, whose factual findings will not be set aside unless clearly wrong. *Bernhardt v. County of Scotts Bluff*, 240 Neb. 423, 482 N.W.2d 262 (1992); *Liberty v. Colonial Acres Nsg. Home*, 240 Neb. 189, 481 N.W.2d 189 (1992).

While the experts agree that Kerkman's symptoms are consistent with the type of injury he received, they do not agree on the cause of his current symptoms. The trial court is entitled to accept the opinion of one expert over another. As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Toombs v. Driver Mgmt., Inc.*, 248 Neb.

1016, 540 N.W.2d 592 (1995). Dr. Cox attributed the injury to an intervening cause.

An independent intervening cause, as the proximate cause of an injury, is a matter of defense and, as such, must be proved by the party asserting that defense. *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). While Kerkman correctly cites *Mendoza* for the proposition that the "mere possibility" of an independent intervening cause does not relieve an employer from liability for an employee's otherwise compensable claim, the facts in this record establish more than a mere possibility.

In his second letter, dated November 11, 1994, Dr. Cox states, after reviewing further records:

> [A]fter reviewing Dr. Blair's notes, I noticed again an incident that occurred on 5-22-92. I noticed a complaint of sharp pain in the back caused by tearing forms off concrete and falling. This incident for a patient who has a pre-existing back condition certainly constitutes an aggravation and/or reinjury. Mr. Kerkman's condition from 5-22-92 on, in my opinion, is more likely a result of that aggravation, and not a natural continuation of his 1987 injuries.

Dr. Cox concludes that "further chiropractic care would not relieve pain, hasten or promote Mr. Kerkman's restoration to health or employment, as a result of the accidents in 1987." There was conflicting evidence on the issue of whether Kerkman "aggravated" or "re-injured" his back while picking up the concrete forms, however, findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. See, *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995); *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995). We conclude that there is sufficient evidence in the record to support a finding that the incident involving picking up the concrete forms was an intervening cause for Kerkman's current symptoms.

REASONABLE CONTROVERSY

We have consistently held that where there is no reasonable controversy, § 48-125 authorizes the award of attorney fees. *Mendoza v. Omaha Meat Processors, supra*; *Rodriquez v. Prime Meat Processors*, 228 Neb. 55, 421 N.W.2d 32 (1988); *McDonald v. Lincoln U-Cart Concrete Co.*, 232 Neb. 960, 442 N.W.2d 892 (1989). Whether a reasonable controversy exists pertinent to § 48-125 is a question of fact. *Mendoza v. Omaha Meat Processors, supra*.

In *Mendoza*, we set forth the test for determining whether a reasonable controversy exists. We said that

> a reasonable controversy may exist: (1) if there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or part.

*Mendoza*, 225 Neb. at 784-85, 408 N.W.2d at 288.

More simply, to avoid the payment of attorney fees assessable under § 48-125, the employer must have a reasonable basis in law or in fact for disputing the employee's claim and refraining from payment of compensation. *Mendoza v. Omaha Meat Processors, supra*. Because there was some conflict in the medical testimony adduced at trial, reasonable but opposite conclusions could be reached by the Workers' Compensation Court. Under our *Mendoza* test, this indicates the presence of a reasonable controversy. Therefore, Kerkman is not entitled to an award of attorney fees.

## CONCLUSION

We conclude that there was sufficient competent evidence in the record to warrant the Workers' Compensation Court's finding that Kerkman's chiropractic treatments were not reasonable or necessary medical expenses required by the nature of

his 1987 injuries. Additionally, we determine that a reasonable controversy existed as to the compensability of the treatments and that no attorney fees are allowed to Kerkman. We therefore affirm.

AFFIRMED.

WHITE, C.J., and LANPHIER, J., not participating.