U S WEST COMMUNICATONS, INC., APPELLEE, V.
CHERYL A. TABORSKI ET AL., APPELLANTS.
572 N.W.2d 81

Filed January 16, 1998.    Nos. S-96-1259 through S-96-1267.

Thomas J. Young, of Young & LaPuzza, for appellants.

Christopher E. Hoyme and William M. Muth, Jr., of Berens & Tate, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and McCORMACK, JJ.

CAPORALE, J.

## I. STATEMENT OF CASES

This consolidated appeal involves nine related workers' compensation cases in which the claimants, the defendants-appellants, Cheryl A. Taborski in case No. S-96-1259; Kimberly J. Fitzner in case No. S-96-1260; Delinda S. Garza, now known as Delinda S. Balaban (hereinafter referred to as Garza-Balaban), in case No. S-96-1261; Kathleen M. Limpp in case No. S-96-1262; Judith A. McKeighan in case No. S-96-1263; Sue A. Volz in case No. S-96-1264; and Dixie L. Hotz-Narine, now known as Dixie L. Hotz (hereinafter referred to as Hotz-Narine), in case No. S-96-1265; and the plaintiffs-appellants, Kathy Ellis in case No. S-96-1266 and Linda Cihacek in case No. S-96-1267, suffered injuries in an accident arising out of and in the course of their employment with U S West Communications, Inc. The claimants appealed to the Nebraska Court of Appeals the generally unfavorable determinations of the Nebraska Workers' Compensation Court review panel concerning the extent of disability and amount of medical benefits to be paid, asserting that the compensation court erred in (1) improperly placing the burden of proof on the claimants, (2) receiving certain medical testimony and relying upon it rather than other medical testimony, (3) entering an award which is inconsistent with its prior orders as well as the pleadings and stipulations, (4) remanding certain determinations to the judge holding the original hearing, and (5) making its award of attorney fees and costs. Under our authority to regulate the caseloads of this court and the Court of Appeals, we, on our own motion, removed the appeal to our docket. In each case, we affirm.

## II. SCOPE OF REVIEW

Under the provisions of Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a

Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Cunningham v. Leisure Inn, ante* p. 741, 573 N.W.2d 412 (1998).

## III. FACTS

On the morning of Thursday, June 6, 1991, a group of U S West employees began to feel ill. The building in which they were working was evacuated, and approximately 31 workers sought emergency medical attention. Complaints again arose on Friday, June 7, and the building was again evacuated. We henceforth refer to these two occurrences as the "incident."

There is evidence that the heating ventilation system, which contained multiple sources of air contaminants, such as volatile organic compounds, and habitats capable of releasing bioaerosol contaminants, together with the workers' complaints and symptoms, represented a well-recognized pattern of conditions commonly known as sick building syndrome.

One physician explained that volatile organic compounds are a major class of contaminants that can cause the syndrome and was of the view that compounds such as spray chemicals, paints, solvents, and cleaning agents were the most likely cause of the incident. He was of the further opinion that particulates were the second most likely cause. According to this witness, when the sudden release of volatile organic compounds causes the syndrome, there is almost no chance of going back and finding an objective cause through the taking and studying of air samples. He also explained that with sick building syndrome, people experience symptoms such as headaches, fatigue, difficulty concentrating, eye irritation, throat irritation, sinus congestion, and coughing when they are in the building, but the symptoms go away when they leave.

The parties stipulated on January 26, 1993, that the claimants suffered personal injury in an accident arising out of and in the course of their employment as a result of the incident. That stipulation further recites that U S West had paid each claimant

some temporary total and temporary partial disability benefits and related medical expenses.

Ruling on the parties' stipulation, the compensation court on original hearing found on March 3, 1993, that each claimant suffered personal injury as a result of an accident arising out of and in the course of employment with U S West. The court also found that as a consequence, each claimant incurred medical and hospital expenses and was intermittently temporarily totally and temporarily partially disabled between June 7, 1991, and December 12, 1992, entitling each to temporary disability benefits, and that the extent of permanent disability, if any, could not yet be determined. In the awards, U S West was ordered to pay any outstanding medical, hospital, and other expenses related to the incident. In addition, the order recited that the court retained jurisdiction such that any party could request a further hearing if unable to agree on subsequent issues, including but not limited to the benefits due and the nature of medical treatment to be provided.

On February 3, 1995, the parties filed another stipulation dated January 9, 1995, which applied, with regard to compensation, from November 5, 1993, and with regard to medical payments, from June 6, 1991. The parties further stipulated, in relevant part:

2. US West . . . agrees to pay compensation as previously awarded by the Court, for the periods of time [claimants were] temporarily disabled for the same or similar previously existing symptoms and conditions for which [they have] received treatment since June 6, 1991 and which [are] supported by . . . statement[s] relating the symptoms and conditions to the exposure [as a result of the incident] from [their] attending physician[s]. Within thirty (30) days of receipt of such a statement, US West . . . will either pay the claim or deny the claim based on its own designated physician's written statement justifying the denial . . . . The denied claim shall then be presented to the [compensation court] for determination as to the obligations of US West . . . to pay the same.

. . . .

6. US West . . . agrees to pay all currently outstanding, related medical expenses for and on behalf of [claimants]

as verified by [their] attending physician[s]. Any such expense submitted on behalf of [claimants] to US West . . . which is denied or remains unpaid as of thirty (30) days from the date hereof may be presented by [claimants] to the [compensation court] for determination as to the obligation of US West . . . to pay same.

. . . .

8. Any claim for compensation arising subsequent to the date hereof which is based upon the same or similar previously existing symptoms and conditions relating to the exposure [as a result of the incident] of [claimants] and supported by a statement from [her] attending physician, shall be paid by US West[, which] shall have the right to contest payments of compensation by bringing such matter before the [compensation court] but shall not cease any such compensation payments without an Order of the [compensation court's] being entered allowing the cessation of compensation.

9. Any claim for medical payments pursuant to §48-120 inclusive of payments for [claimants'] attending physician[s] or referrals by said physician[s] for conditions previously treated and identified by said physician[s] as relating to [claimants'] injur[ies] or illness[es] arising out of [their] employment shall be paid by US West . . . . Claims for medical payments pursuant to §48-120 shall be paid by US West . . . unless within thirty (30) days of receipt any such claim is denied. Any claim so denied may be presented by [claimants] to the [compensation court] for determination as to the obligation of US West . . . to pay same.

On February 21, 1995, the compensation court entered what is denominated "Further Award" in accordance with the parties' January 9, 1995, stipulations. According to the compensation court:

[2]

The stipulation of the parties in regard to payment of compensation benefits, including temporary and permanent disability benefits, applies for the period from and after November 5, 1993 as the parties agree there is no dis-

pute between them as to payment of disability benefits to and including November 4, 1993. As a result of said stipulation, [U S West] agrees to pay compensation benefits for disability that is supported by a statement from the [claimants'] attending physician[s] that causally relates the treatment to [the incident], and said payment will be made within 30 days of receipt of said statement. [U S West] shall have the right to deny said claim within said 30 day period based on its own designated physician's written statement justifying said denial. A further hearing can then be requested by either party to determine the compensability of said claim.

[3]

[U S West] agrees to pay all currently outstanding, related medical expenses of the [claimants] as verified by the [claimants'] attending physician[s]. A further hearing may be requested by either party on any medical expenses denied or remaining unpaid as of 30 days from the date of said stipulation.

[4]

[U S West] further agrees to pay any claim for compensation which arises subsequent to the date of said stipulation which is based upon the same or similar previously existing symptoms and conditions relating to the exposure [as a result of the incident] of the [claimants] and supported by a statement from [her] attending physician. [U S West] shall have the right to contest payments of such compensation but shall not cease any such payments without an order of the [compensation court's] being entered allowing the cessation of said compensation.

. . . .

[8]

The Court retains jurisdiction of this matter and a further hearing may be requested as set forth in said stipulation.

Later, claimants Taborski, Fitzner, Limpp, McKeighan, Volz, Hotz-Narine, Ellis, and Cihacek filed motions for a further hearing, asking that the compensation court determine the extent of their permanent disability, the payment of medical expenses incurred and unpaid, temporary total disability pay-

ments due and unpaid from and after November 1993, waiting time penalties, attorney fees, and the obligation of U S West with regard to further and future medical treatment. According to the motions, since the court's February 21, 1995, award, the parties had been unable to resolve issues dealing with the payment of disability benefits and medical expenses incurred and to be incurred in the future. According to the court, claimant Garza-Balaban filed a similar motion. Claimants Taborski, Fitzner, Limpp, McKeighan, Volz, Hotz-Narine, and Ellis further alleged in separate motions that U S West had refused and failed to make payments on certain claims.

On January 29, 1996, the compensation court entered on original hearing what it labeled either a "Further Award" or "Modification of Awards." The court found that claimants Taborski, Limpp, McKeighan, and Ellis each filed claims for temporary total and temporary partial disability benefits in accordance with paragraph 2 of the parties' January 9, 1995, stipulation, asserting that U S West had not complied with the stipulation with regard to these claims. The compensation court found U S West liable for these claims and held further that U S West was entitled to a credit for all disability payments already made. The court found that claimants Fitzner, Volz, and Hotz-Narine had not claimed temporary disability benefits between November 6, 1993, and January 9, 1995; that claimant Garza-Balaban had suffered no disability after November 1993; and that claimant Cihacek had suffered no disability since October 1992. The court then found that the claimants failed to meet their burden of proving that any continuing symptomatologies, disease processes, or maladies from which they presently suffer are causally related to the incident. Thus, the compensation court held that U S West was not liable for any further workers' compensation benefits.

The claimants thereafter sought review. After they filed their appeals to the review panel, U S West filed cross-appeals. Notwithstanding its prior stipulations, U S West asserted as to each of the claimants that the judge on original hearing erred in holding that the claimants had suffered a personal injury. As to claimants Taborski, Limpp, McKeighan, and Ellis, U S West asserted in addition that the judge on original hearing erred in

awarding certain temporary disability benefits, in awarding attorney fees and waiting time penalties, and in awarding witness fees.

The review panel dismissed the cross-appeals and in part reversed and remanded Taborski's and McKeighan's cases, directing the judge on original hearing to recalculate the amount of credit due to U S West for paying temporary total and temporary partial disability and the amount of attorney fees U S West owes. According to the review panel, the judge on original hearing improperly credited U S West with amounts paid during a period of time when these claimants were disabled. Similarly, the review panel in part reversed and remanded Limpp's case, directing the judge on original hearing to recalculate the amount of credit due to U S West for paying temporary total and temporary partial disability and the amount of waiting time compensation and attorney fees U S West owes.

With regard to Ellis, the review panel found that the judge on original hearing erred in crediting U S West for disability payments made during a period of time when Ellis was found to be disabled. Thus, the review panel remanded the case for the judge on original hearing to recalculate the amount of credit due to U S West and waiting time and attorney fees owed by U S West. The review panel further found that the judge on original hearing erred in calculating the amount of total temporary disability and remanded the case for a new finding.

The review panel otherwise affirmed the decisions of the judge on original hearing.

## IV. ANALYSIS

### 1. BURDEN OF PROOF

In the first assignment of error, the claimants urge that the compensation court mistakenly placed the burden of proof on them rather than on U S West. More particularly, they contend that U S West could change its obligations under the orders entered on original hearing prior to January 29, 1996, only by seeking a modification thereof under Neb. Rev. Stat. § 48-141 (Reissue 1993), which provides in relevant part that any "time after six months from the date of the . . . award, an application may be made by either party on the ground of increase or decrease of incapacity . . . ."

The claimants correctly assert that in a proceeding to modify a prior award, the employer has the burden of establishing a decrease of incapacity and the employee has the burden of establishing an increase. *Oham v. Aaron Corp.*, 222 Neb. 28, 382 N.W.2d 12 (1986). However, the threshold question is whether there was here an award entered prior to January 29, 1996, which was subject to modification under § 48-141. That question requires that we look at the nature of the three orders entered on original hearing.

The first, the March 3, 1993, order, dealt with disabilities experienced in the past and provided for the payment by U S West of past and outstanding medical, hospital, and other expenses. The second, the February 21, 1995, order, provided a procedure for resolving disputes among the parties relating to ongoing disability and other claims. Not until the third, the January 29, 1996, order, was the full extent of injury to the claimants determined.

While the first two orders may have been irregular partial awards, see *Dymak v. Haskins Bros. & Co.*, 132 Neb. 308, 271 N.W. 860 (1937), and *G. A. Steinheimer Co. v. Podkovich*, 122 Neb. 710, 241 N.W. 287 (1932) (parties in workers' compensation case entitled to complete and final disposition), no one appealed the partial nature of the orders or makes such complaint here. Whatever else might be said of those earlier orders, they did not fix the ultimate nature of the claimants' individual conditions.

The fact that it had been determined by admission, stipulation, and findings of the compensation court that the claimants sustained personal injuries in an accident arising out of and in the course of their employment with U S West did not relieve them of the obligation to prove, by a preponderance of the evidence, that the employment proximately caused the disability for which they seek compensation.

In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of or occurring in the course of his or her employment proximately caused an injury which resulted in disability compensable under the act. *Dyer v. Hastings Indus.*, 252 Neb.

361, 562 N.W.2d 348 (1997). Thus, a workers' compensation claimant bears the burden to establish a causal relationship between the claimant's alleged injury and his or her employment. *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). To recover compensation benefits, an injured worker is required to prove by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. *Winn v. Geo. A. Hormel & Co.*, 252 Neb. 29, 560 N.W.2d 143 (1997). Nothing in U S West's admission, in the stipulations of the parties, or in the pre-January 29, 1996, orders directs that statements from the claimants' physicians shall conclusively satisfy the claimants' burden of proof, regardless of what evidence U S West presents. Neither is there anything in the record which placed the burden of proof on U S West.

Accordingly, the compensation court did not err in placing the burden of proof on the claimants.

### 2. MEDICAL EVIDENCE

In the second assignment of error, the claimants assert that the compensation court was wrong in receiving the testimony of Dr. David Schwartz and in relying upon it rather than on the testimony of their physicians and experts.

We begin with a review of the relevant evidence in this regard.

Dr. Robert N. Brown treated seven of the nine claimants: Taborski, Fitzner, Garza-Balaban, Volz, Hotz-Narine, Ellis, and Cihacek. According to Brown, each of these claimants has complained about headaches, difficulty concentrating, emotional problems, depression, and sensitivity to particular odors, and each constantly suffers from headaches, fatigue, and difficulty concentrating. He is of the opinion that the claimants were exposed to a volatile organic compound and is of the view that these claimants' symptoms were not caused by a low-level respiratory irritant such as mold spores or pollen. He considers each of the claimants he treated to be on a gradual downhill course and is of the opinion that each will require future medical attention to treat symptoms related to the incident.

In Brown's opinion, Taborski is totally and permanently disabled due to her severe headaches, confusion, and impaired perception. Brown is of the view that Fitzner is totally and perma-

nently disabled. In Brown's view, Garza-Balaban has been affected by the incident and may experience future problems as a result. Brown testified that in addition to the other symptoms described earlier, Volz experienced musculoskeletal problems and that her hepatitis C became more active following the incident. Dr. Imran Khan treated Volz and concluded that she is 60 percent disabled, but as she cannot return to work, is permanently disabled in that regard.

Brown is of the opinion that Hotz-Narine is totally and permanently disabled as a result of the incident. She was also treated by Kahn, who testified that as a result of the incident, in addition to other symptoms she suffers from fibromyalgia, that is, pain over the entire body. In his opinion, she is 60 percent disabled, but as she cannot return to work, he considers her permanently disabled in that regard.

According to Brown, Ellis has had respiratory problems in addition to the other symptoms described earlier, and although she can treat her headaches with medication, she is prone to overmedicate, which causes her to become nonfunctional, as do the untreated headaches. In his opinion, Ellis is totally and permanently disabled.

Brown considers Cihacek to have been affected by the incident and expects that she may experience some future problems as a result.

Dr. Scott D. Blair treated Limpp and McKeighan. He recalls that each at various times complained of nausea, vomiting, fatigue, headaches, diarrhea, lack of concentration, memory loss, and vesiculations or tremors. He is of the view that the symptoms are ongoing problems likely caused by some type of chemical exposure while Limpp and McKeighan were employed at U S West. Although not certain, he suspects that they were exposed to a pesticide, not respiratory irritants such as pollen or mold spores, as exposure to pollen and mold spores does not result in nausea, vomiting, diarrhea, leg weakness, vesiculations, tremors, memory loss, and lack of concentration.

Blair testified that Limpp's condition is slowly getting worse and that she is unable to work, is permanently disabled, and will require future medical care as a result of the incident. He is of the further opinion that as McKeighan cannot think clearly, she

is permanently disabled as a result of the incident and will require future medical care.

Schwartz studied the claimants' medical records, examined the claimants, and, along with other physicians, conducted an independent review of them. He concluded that the claimants' test results are not consistent with a toxic exposure and that there is no relationship between the incident and the claimants' current symptoms. He summarized his findings and those of his colleagues thusly: "Although each of the [claimants] continue[s] to have general physical complaints and ongoing primary care needs, none of [them have] specific medical problems that appear to be related to the reported exposure at U.S. West." He further concluded that "all of these [claimants] have a constellation of symptoms that they date to the exposure . . . . These [claimants] have been extensively evaluated with no significant physical findings or abnormal laboratory results noted."

Schwartz explained that the claimants' symptoms differed from one claimant to the next and that no objective evidence substantiated their symptoms. While he is of the view that the claimants are suffering from the symptoms they complain about, he testified that there is no evidence that the symptoms represent a pathologic underlying disease.

Schwartz found no evidence that the incident resulted in a high-level exposure but concluded that the incident may have resulted in a low-level exposure. In his view, if the claimants experienced a low-level exposure, they would have been symptomatic for no more than a month or two. He explained further that when individuals are exposed to a common source, they are expected to experience similar symptoms and similar diagnoses. According to Schwartz, the claimants "are complaining of very, very different things." The presence of different symptoms suggests that the symptoms could be caused by things totally unrelated to the incident. In his view there is, among the claimants,

> absolutely no pattern of disease outcome that you could begin to formulate and even justify as being related to an exposure that took place. Even if it was an absolutely new disease outcome like the Crown Point Syndrome, a new process, something that medicine had never seen before,

you'd expect to see a similarity in terms of the symptoms for these individuals, and you just simply don't see that.

In contrast, Dr. Matthias I. Okoye testified that patients who have been exposed to the same chemicals may suffer different symptoms.

The claimants urge that as Schwartz' opinions rested on nothing more than mere conjecture or guess as to the extent of the exposure to which the claimants were subjected, his opinions could form no basis for the compensation court's decision. That overlooks, however, that there was evidence that the chances of finding an objective cause by means of sampling air are remote. Indeed, the compensation court found that the level of exposure is unknown. Nonetheless, Schwartz assumed a low-level exposure based upon his examination of the claimants and his review of the medical reports, including the opinions of the claimants' treating physicians and other experts and various environmental reports. Schwartz thus had an adequate basis for his opinions.

It is the role of the Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe. *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651, 558 N.W.2d 564 (1997). Accordingly, when the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996).

As it was within the discretion of the compensation court to determine which, if any, medical expert to believe, this assignment is without merit.

### 3. INCONSISTENT NATURE OF AWARD

In the third assignment of error, the claimants maintain that the compensation court improperly entered an award which is inconsistent with the pleadings, stipulations, and its earlier orders.

First, the claimants argue that the pleadings negate the compensation court's finding that Schwartz partially based his opinion on a lack of similarity in symptoms of the claimants. They contend that U S West's failure to contest the allegations in their petitions that they suffer from " 'sore throat, tightness in the chest, light headedness, headaches, lack of concentration, dis-

orientation, exhaustion, fatigue and the like' " amounts to a judicial admission on the part of U S West that the claimants suffer from the same symptoms. Brief for appellants at 33. However, the claimants point to no specific admission by U S West in the pleadings; they rest their argument only on U S West's failure to contest their lists of alleged symptoms.

A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true. *Robison v. Madsen*, 246 Neb. 22, 516 N.W.2d 594 (1994). Judicial admissions must be unequivocal, deliberate, and clear, and not the product of mistake or inadvertence. *Id.* In no sense can it be said that U S West's failure to address the claimants' allegations of symptoms amounts to a judicial admission.

The claimants also assert that the compensation court's ultimate decisions were contrary to the parties' stipulations and the court's previous orders. In this regard, the claimants argue, in essence, that under the stipulations and the court's previous orders, the court was obligated to assess and determine U S West's obligations and responsibilities based upon the statements of the claimants' attending physicians. That is to say, once a claimant submitted a claim accompanied by a physician's statement relating the claim to the incident, U S West had no other option but to pay the claim.

This argument misrepresents the stipulations and previous orders. Pursuant to the January 9, 1995, stipulations and the February 21 orders, U S West could either pay or deny any claim for medical expenses within 30 days of submission. If U S West denied a claim, the claimants were permitted to present the denied claims to the compensation court for a determination as to U S West's obligation to pay. These stipulations and orders also allowed U S West to contest workers' compensation payments by bringing such matters to the compensation court.

Thus, this assignment of error is also without merit.

#### 4. REMAND TO JUDGE ON ORIGINAL HEARING

The claimants insist in the fourth assignment of error that the compensation court review panel wrongly remanded the cases

of Taborski, Limpp, McKeighan, and Ellis rather than modifying the awards on original hearing by correcting the errors the review panel found with regard to the amounts due and the awards of attorney fees. The claimants contend that rather than remanding the cases, the compensation court review panel should have simply awarded the additional amounts found to be due.

The short and dispositive answer to this claim is that Neb. Rev. Stat. § 48-179 (Reissue 1993) empowers the review panel to "affirm, modify, reverse, or remand the judgment on the original hearing." That being so, the review panel did not err in ruling as it did in this regard.

### 5. ATTORNEY FEES AND COSTS

In the fifth and final assignment of error, the claimants challenge the compensation court's award of attorney fees and costs.

Claimants Taborski, Limpp, McKeighan, and Ellis contend that the compensation court wrongly determined that a reasonable controversy existed with regard to the payment of disability benefits for the time period between November 1993 and January 9, 1995. These claimants therefore urge that the compensation court erred in failing to award attorney fees and interest pursuant to Neb. Rev. Stat. § 48-125 (Reissue 1993), which provides, in relevant part:

> Whenever the employer refuses payment of compensation or medical payments subject to section 48-120, or when the employer neglects to pay compensation for thirty days after injury or neglects to pay medical payments subject to such section after thirty days' notice has been given of the obligation for medical payments, and proceedings are held before the Nebraska Workers' Compensation Court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award.

Whether a reasonable controversy exists under § 48-125 is a question of fact. *Grammer v. Endicott Clay Products*, 252 Neb. 315, 562 N.W.2d 332 (1997); *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996).

> "[A] reasonable controversy may exist: (1) if there is a question of law previously unanswered by the Supreme

Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or part."

*Kerkman*, 250 Neb. at 80, 547 N.W.2d at 158, quoting *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). Thus, to avoid the payment of attorney fees assessable under the foregoing portion of § 48-125, the employer must have a reasonable basis in law or in fact for disputing the employee's claim and refraining from payment of compensation. *Kerkman, supra; Mendoza, supra.*

The compensation court found on original hearing that U S West failed to follow the January 9, 1995, stipulations with regard to its denial of the claims of Taborski, Limpp, McKeighan, and Ellis submitted between November 5, 1993, and January 9, 1995. More specifically, the court found that while the claimants presented proper statements from their attending physicians supporting the payment of benefits, U S West failed to present a statement from its own designated physician justifying the denial until U S West filed its July 24, 1995, affidavit containing Schwartz' December 13, 1994, report. The review panel likewise found Schwartz' December 13 report insufficient to deny the claims, as the stipulation makes sense only if U S West's denials were based upon a statement by its own designated physician generated after the date of the stipulation.

There was clearly a conflict in the medical testimony adduced at the original hearing. In addition, there was a conflict concerning whether Schwartz' December 13 report satisfied the requirements of the January 9, 1995, stipulation. Thus, the compensation court did not err in determining that a reasonable controversy existed with regard to the payment of disability benefits for the time period between November 1993 and January 9, 1995.

Next, the claimants contend that the review panel erred in failing to award them attorney fees pursuant to the provisions of § 48-125 for defending against U S West's cross-appeal. Because the review panel found U S West's cross-appeal to be frivolous, it awarded each claimant an attorney fee of $100 pursuant to Neb. Rev. Stat. § 25-824(2) (Reissue 1995), which provides:

> Except as provided in subsections (5) and (6) of this section, in any civil action commenced or appealed in any court of record in this state, the court shall award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney's fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith.

The portion of § 48-125 relevant to this claim reads:

> If the employer files an application for review before the compensation court from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award, the compensation court shall allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such review, and the Court of Appeals or Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in the Court of Appeals or Supreme Court.

As U S West concedes, the filing of a cross-appeal by an employer constitutes the filing of an appeal within the meaning of § 48-125. See *Mulder v. Minnesota Mining & Mfg. Co.*, 219 Neb. 241, 361 N.W.2d 572 (1985). Whereas § 25-824(2) makes the award of "reasonable attorney's fees" dependent, so far as relevant here, upon the frivolousness of a claim or defense, the pertinent provisions of § 48-125 make the award of such fees dependent upon whether the appealing employer succeeds in obtaining a reduction in the award. "Frivolousness" for the purposes of § 25-824(2) is defined as being a legal position wholly without merit, that is, without rational argument based on law and evidence to support a litigant's position. *First Nat. Bank in Morrill v. Union Ins. Co.*, 246 Neb. 636, 522 N.W.2d 168 (1994). Thus, frivolousness in litigation is a different concept than success in litigation. To that extent, §§ 25-824(2) and

48-125 are in conflict for the purpose of the rule that to the extent there is conflict between two statutes on the same subject, the specific statute controls over the general statute. *State ex rel. Stenberg v. Murphy,* 247 Neb. 358, 527 N.W.2d 185 (1995). Thus, even if as a court of limited and special jurisdiction, see *Thach v. Quality Pork International, ante* p. 544, 570 N.W.2d 830 (1997), the compensation court had the power to resort to § 25-824(2) in awarding attorney fees, a question we do not decide, it should have applied § 48-125 rather than § 25-824(2).

However, the claimants have not established that they have been prejudiced by that error. Under either § 25-824(2) or § 48-125, the attorney fee is to be reasonable; there is no showing that the fees awarded were otherwise. We recognize that Neb. Rev. Stat. § 25-824.01 (Reissue 1995) specifies a number of factors to be considered in determining the amount of an attorney fee to be awarded under § 25-824(2) which have no direct application to the determination of a reasonable fee under § 48-125. See *Muller v. Tri-State Ins. Co.,* 252 Neb. 1, 560 N.W.2d 130 (1997). However, as there is no showing that the fees awarded are unreasonable, that difference is not material here.

Finally, the claimants complain that the compensation court "did not assess costs with regard to any of the actions before it." Brief for appellants at 56. The claimants recite in their brief that they paid for both a preappeal transcription of the evidence and the bill of exceptions filed herein. However, we are led to no evidence concerning this claim, and, therefore, there is nothing for us to review in that regard.

## V. JUDGMENT

Since the record fails to sustain any of the claimants' assignments of error, we, as first noted in part I, in each case affirm the judgment of the compensation court.

AFFIRMED.

STEPHAN, J., not participating.