ROBERT K. McBEE, APPELLANT AND CROSS-APPELLEE,
V. GOODYEAR TIRE AND RUBBER COMPANY, INC.,
APPELLEE AND CROSS-APPELLANT.
587 N.W. 2d 687

Filed January 8, 1999.    No. S-97-1140.

Gordon Peterson, of Orton, Thomas, Peterson & O'Connell, for appellant.

Anne E. Winner, of Keating, O'Gara, Davis & Nedved, P.C., for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Robert K. McBee, appellant, was injured in an accident arising out of and in the course of his employment on September 30, 1992, and claimed certain benefits under the Nebraska workers' compensation laws. Up through August 1995, all of McBee's benefits were paid to him voluntarily by his employer, Goodyear Tire and Rubber Company, Inc., appellee. After August 1995, Goodyear refused to pay McBee any further temporary total disability benefits, based on McBee's medical records and specifically on an entry concerning a basketball injury. McBee brought this claim before the Nebraska Workers' Compensation Court. The trial court held that Goodyear was not justified in refusing to pay McBee further benefits, because there was no reasonable controversy on medical causation. It also found that Goodyear had a duty to inquire and to investigate the compensability of McBee's claim. The trial court ordered Goodyear to pay a 50-percent penalty payment, attor-

ney fees, interest, and costs. Goodyear filed an application for review, and the review panel found there was a reasonable controversy regarding medical causation and reversed the award of the 50-percent penalty payment, attorney fees, interest, and costs. The review panel further found that Goodyear did not have a duty to inquire and to investigate McBee's claim. On our own motion, we removed the matter to this court under our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. We affirm.

## BACKGROUND

McBee was injured in an accident arising out of and in the course of his employment with Goodyear when he struck his right elbow. Soon after the injury, McBee sought medical care and was referred to Dr. William Garvin, whom McBee saw for the first time in October 1993. The original diagnosis was lateral epicondylitis of the right elbow. Garvin continued to be McBee's main treating orthopedic physician through the time of trial. McBee and Goodyear agreed that McBee was entitled to temporary total disability from November 26, 1993, through April 4, 1994, and from August 29 through September 14, 1994, which Goodyear voluntarily paid. The parties have stipulated that all temporary total disability benefits due prior to August 9, 1995, have been paid.

On June 6, 1995, McBee went to see Garvin and mentioned in this visit that he had jammed his right elbow while playing basketball. Up to and including this visit, Garvin's diagnosis of McBee's condition continued to be chronic lateral epicondylitis. However, at this visit, McBee was also diagnosed with ulnar nerve irritation on the right elbow. In August or September 1995, Tom Booth, who supervises workers' compensation cases for Goodyear; Burt Metzger, of Travelers Insurance Company, which administers Goodyear's self-insured plan; and Anne Winner, Goodyear's attorney in this case, met to discuss several pending workers' compensation cases, including McBee's. Based on the medical records from Garvin, especially the entry concerning the basketball incident, and on the recommendation of Winner, Goodyear decided not to pay any further temporary total disability benefits to McBee.

McBee filed a petition in the compensation court. Goodyear filed an answer in the form of a general denial. In September 1996, McBee's attorney took the deposition of Garvin for use at trial. In his deposition, Garvin stated that the lateral epicondylitis was caused by McBee's original work injury on September 30, 1992. On direct examination, Garvin related the ulnar nerve irritation to the 1992 injury, but on cross-examination, indicated the injury to the ulnar nerve might be from the basketball incident. Sometime after Garvin's deposition was taken, the parties stipulated that Goodyear owed McBee past temporary total disability benefits for the dates August 10, August 24, and August 25, 1995, and from August 29, 1995, up to and including August 19, 1996, a period of 360 days or $51\frac{3}{7}$ weeks, at the maximum temporary total disability rate of $265 per week. The parties further stipulated that Goodyear tendered checks to McBee on October 18 and November 25, 1996, in payment of the past due temporary total disability benefits. McBee does not claim a penalty payment based on untimely payments after the date of Garvin's deposition.

The trial court concluded there was no reasonable controversy regarding the causation of McBee's injury from and after June 6, 1995, and awarded McBee past temporary total disability (which Goodyear had already paid) and a 50-percent penalty payment for the previously unpaid benefits for the period between August 10, 1995, and August 19, 1996; attorney fees; interest; and costs. The trial court also found that Goodyear had a duty to inquire and to investigate the compensability of McBee's claim, which it failed to do.

Goodyear appealed. The review panel reversed the trial court's decision on the issue of whether or not there was a reasonable controversy, concluding there was a reasonable controversy on medical causation. It also reversed the trial court's award of a 50-percent penalty payment, attorney fees, interest, and costs. The review panel further reversed the trial court's finding that Goodyear had a duty to affirmatively inquire and to investigate the compensability of McBee's claim.

## ASSIGNMENTS OF ERROR
McBee assigns that the review panel erred in (1) finding that the trial court was clearly wrong when it found there was no

reasonable controversy about medical causation, (2) reversing the trial court's finding that Goodyear had a duty to perform an ongoing investigation of the medical facts of this case, and (3) reversing the trial court's award of a 50-percent penalty payment, attorney fees, interest, and costs.

Goodyear cross-appeals, asserting that if this court reverses the review panel's decision, we should not reinstate the trial court's award of a $5,000 attorney fee, as that sum represents fees and costs incurred in the entire representation of McBee at the trial court level.

## STANDARD OF REVIEW

Under the provisions of Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *U S West Communications v. Taborski*, 253 Neb. 770, 572 N.W.2d 81 (1998); *Cunningham v. Leisure Inn*, 253 Neb. 741, 573 N.W.2d 412 (1998).

The findings of fact made by a workers' compensation court trial judge are not to be disturbed upon appeal to a workers' compensation court review panel unless they are clearly wrong on the evidence or the decision was contrary to law. *Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996).

Findings of fact made by the compensation court after review have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly erroneous. § 48-185; *Varela v. Fisher Roofing Co.*, 253 Neb. 667, 572 N.W.2d 780 (1998); *Winn v. Geo. A. Hormel & Co.*, 252 Neb. 29, 560 N.W.2d 143 (1997).

In testing the sufficiency of evidence to support findings of fact made by the compensation court after rehearing, the evidence must be considered in the light most favorable to the successful party. *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996); *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994).

If the record contains evidence to substantiate the factual conclusions reached by the compensation court, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998).

## ANALYSIS

McBee suffered injury to his right elbow as a result of an accident arising out of and in the course of his employment with Goodyear, when he struck his right elbow. At this stage in the litigation, neither of the parties contests these facts. The only issues in contention are whether McBee is entitled to a 50-percent penalty payment, attorney fees, interest, and costs as part of his award and whether Goodyear had a duty to perform an ongoing investigation of the medical facts of this case.

As construed by this court, Neb. Rev. Stat. § 48-125 (Reissue 1993) authorizes a 50-percent penalty payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation. *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. 901, 448 N.W.2d 591 (1989); *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). Whether a reasonable controversy exists pertinent to § 48-125 is a question of fact. *Starks v. Cornhusker Packing Co., supra*; *U S West Communications v. Taborski, supra*. In *Mendoza v. Omaha Meat Processors, supra*, this court adopted guidelines to aid courts in determining whether a reasonable controversy exists. A reasonable controversy may exist (1) if there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. *U S West Communications v. Taborski, supra*; *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996); *Mendoza v. Omaha Meat Processors, supra*. Under the *Mendoza* test, when there is some conflict in the medical testi-

mony adduced at trial, reasonable but opposite conclusions could be reached by the compensation court. As such, this indicates the presence of a reasonable controversy. *Kerkman v. Weidner Williams Roofing Co., supra*. See, also, *Tlamka v. Goodyear Tire & Rubber Co.*, 225 Neb. 789, 408 N.W.2d 291 (1987) (no reasonable controversy existed when all medical testimony agreed that claimant's condition was probably caused by his industrial accident).

After McBee was initially injured, Goodyear voluntarily paid workers' compensation benefits to McBee until August 1995. Before Garvin's deposition was taken in September 1996, McBee presented no evidence of a causal relationship between his injury and his employment. A workers' compensation claimant bears the burden to establish a causal relationship between the alleged injury and the employment. *U S West Communications v. Taborski*, 253 Neb. 770, 572 N.W.2d 81 (1998).

The review panel, after reviewing the evidence, concluded that there was no evidence establishing a causal relationship between the alleged injury and the employment prior to Garvin's deposition on September 17, 1996, and that a reasonable controversy existed up to that point. Goodyear's payments for temporary total disability were made within 30 days of Garvin's deposition, and the review panel correctly determined that penalties pursuant to § 48-125 should not have been imposed by the trial judge.

Until an employee presents the employer with competent medical evidence that he or she is entitled to workers' compensation benefits, a reasonable controversy may exist regarding the employer's liability notwithstanding the fact that the employer has voluntarily paid benefits to the employee. Voluntary payments of compensation do not constitute an admission of liability by the employer. The fact, however, that an employer voluntarily pays benefits does not in all cases permit the employer to cease payment of benefits without being subject to penalties if the cessation of benefits was not justified.

## DUTY TO INVESTIGATE

McBee assigns as error the review panel's holding that Goodyear did not have a duty to investigate the compensability

of McBee's claim. We conclude that on the facts of this case, where the payments are voluntary, Goodyear did not have an affirmative duty to investigate, and we affirm the review panel's holding on this issue.

### GOODYEAR'S CROSS-APPEAL

Goodyear cross-appealed, asserting that if this court were to reverse the review panel's decision, we should not reinstate the trial court's award of a $5,000 attorney fee, as that sum represents all the fees and costs incurred in the entire representation of McBee at the trial court level. We do not need to address Goodyear's cross-appeal, as we are affirming the review panel's holding, and therefore, McBee is not entitled to an award of any attorney fees.

AFFIRMED.

HENDRY, C.J., not participating.