did not witness the incident. Neither the State nor the defense presented additional evidence on this issue.

Without any other evidence to rely on, the district court found Cronin's testimony to be more credible than Wells' testimony. We are not in a position to reweigh the credibility of the witnesses.

Viewing the evidence in a light most favorable to the prosecution, which in this case would mean assuming Cronin's account of the incident is correct, there was sufficient evidence to find all essential elements of the crime beyond a reasonable doubt. The evidence establishes that Wells knew Cronin was a police officer performing his official duties and that Wells caused a bodily injury by kicking Cronin in the knee and thigh several times, which resulted in pain to Cronin. Wells' assignment of error is without merit.

## CONCLUSION

The judgment and sentences of the district court are affirmed.

Affirmed.

Wright, J., participating on briefs.

———————————

Terry J. Armstrong, appellant, v.
State of Nebraska, appellee.

___ N.W.2d ___

Filed February 20, 2015.    No. S-14-438.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.

3. ____: ____. In workers' compensation cases, an appellate court determines questions of law.

4. **Workers' Compensation: Words and Phrases.** Earning power, as used in Neb. Rev. Stat. § 48-121(2) (Reissue 2010), is not synonymous with wages. It includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he or she is engaged or for which he or she is fitted.

5. \_\_\_\_: \_\_\_\_. Total disability does not mean a state of absolute helplessness. It means that because of an injury (1) a worker cannot earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform or (2) the worker cannot earn wages for work for any other kind of work which a person of his or her mentality and attainments could do.

6. **Workers' Compensation.** A worker is not, as a matter of law, totally disabled solely because the worker's disability prevents him or her from working full time.

7. \_\_\_\_. Under the "odd-lot" doctrine, total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market.

8. \_\_\_\_. A worker may be totally disabled for all practical purposes, despite being able to find trivial, occasional employment under rare conditions at small remuneration.

9. \_\_\_\_. Whether a claimant has suffered a loss of earning power or is totally disabled are questions of fact.

10. **Appeal and Error.** For an appellate court to consider an alleged error, a party must specifically assign and argue it.

11. **Workers' Compensation: Penalties and Forfeitures: Time.** Under Neb. Rev. Stat. § 48-125(1)(b) (Cum. Supp. 2014), an employer must pay a 50-percent waiting-time penalty if (1) the employer fails to pay compensation within 30 days of the employee's notice of disability and (2) no reasonable controversy existed regarding the employee's claim for benefits.

12. **Workers' Compensation: Appeal and Error.** For the purpose of Neb. Rev. Stat. § 48-125 (Cum. Supp. 2014), a reasonable controversy exists if (1) there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court about an aspect of an employee's claim, which conclusions affect allowance or rejection of an employee's claim, in whole or in part.

13. **Workers' Compensation: Attorney Fees: Penalties and Forfeitures: Words and Phrases.** Whether a reasonable controversy exists under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2014) is a question of fact.

14. **Workers' Compensation: Evidence: Time.** Evidence showing a reasonable controversy does not have to be known to the employer at the time it refuses benefits.

15. **Statutes: Judicial Construction: Legislature: Presumptions: Intent.** Ordinarily, when an appellate court judicially construes a statute and that construction does

not evoke an amendment, the court presumes that the Legislature acquiesced in the court's determination of the Legislature's intent.

16. **Workers' Compensation.** Because an employer is liable under Neb. Rev. Stat. § 48-120 (Reissue 2010) for reasonable medical and hospital services, the employer must also pay the cost of travel incident to and reasonably necessary for obtaining these services.

Appeal from the Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Affirmed in part, and in part reversed and remanded with directions.

Michelle D. Epstein and Jason G. Ausman, of Ausman Law Firm, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Elizabeth A. Gregory for appellee.

WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CONNOLLY, J.

## SUMMARY

Terry J. Armstrong was injured while working as a nurse in the employ of the State of Nebraska. The Workers' Compensation Court found that Armstrong was permanently partially disabled and suffered a 75-percent loss of earning power. On appeal, Armstrong argues that a worker who is permanently restricted to part-time work is, as a matter of law, totally disabled. Armstrong also argues that evidence produced by an employer at trial—but unknown at the time benefits are denied—cannot create a reasonable controversy for purposes of the employee's entitlement to a waiting-time penalty. We disagree on both points, but remand the cause so that the court may decide if the State is liable for certain mileage expenses.

## BACKGROUND

### FACTUAL BACKGROUND

On May 22, 2010, Armstrong injured her left shoulder while working as a staff nurse at the Eastern Nebraska Veterans' Home. Armstrong and her employer stipulated that Armstrong

suffered a rotator cuff tear in her left shoulder for which she was "entitled to compensation." The State paid Armstrong temporary total disability (TTD) benefits from May 22, 2010, until April 23, 2012, when it concluded that Armstrong had reached maximum medical improvement.

As one physician noted, Armstrong's "medical history is indeed complicated." Armstrong underwent surgery to repair the rotator cuff tear in August 2010. Her surgeon stated in September 2011 that Armstrong had reached maximum medical improvement as to her rotator cuff injury.

But multiple physicians opined that Armstrong developed complex regional pain syndrome (CRPS) after the surgery. CRPS is a chronic pain condition that usually affects a limb after an injury to that limb.

At the request of Armstrong's attorney, Dr. D.M. Gammel reviewed the "countless medical records" and examined Armstrong on October 8, 2013. Gammel concluded that Armstrong's rotator cuff injury caused her CRPS and that her CRPS had reached maximum medical improvement. Gammel opined that Armstrong was permanently limited to working 4-hour days.

Two physicians who examined Armstrong and the medical records at the State's request reached different conclusions. One found "minimal objective evidence" of CRPS and opined that Armstrong was malingering. The other stated that Armstrong's "bilateral upper extremity hypersensitivity" was not caused by the May 2010 accident.

PROCEDURAL BACKGROUND

In January 2013, Armstrong filed a petition in Workers' Compensation Court alleging that she suffered from CRPS and had sustained injuries to both her left and right upper limbs because of the May 2010 accident. Armstrong also alleged that she suffered from bipolar, anxiety, and adjustment disorders because of the accident. Armstrong requested TTD benefits from May 22, 2010, to October 8, 2013—the date Gammel opined that she reached maximum medical improvement as to her CRPS—and permanent total disability benefits starting on October 8, 2013.

The court appointed a vocational rehabilitation counselor to provide a loss of earning capacity analysis. Karen Stricklett, the appointed counselor, authored a report that gave different estimates based on the opinions of various physicians. Because of Gammel's opinion that Armstrong could work only 4 hours per day, Stricklett estimated that Armstrong would have a 75-percent loss of earning capacity.

The compensation court entered an award finding that Armstrong was entitled to TTD and permanent partial disability benefits. In addition to the rotator cuff tear, the court found that Armstrong suffered from CRPS because of the accident. The court also found that Armstrong's preexisting anxiety had worsened because of the May 2010 accident. But it concluded that any changes in Armstrong's depression or cognition were unrelated to the workplace injury.

The court awarded Armstrong TTD benefits from April 24, 2012, to October 8, 2013. After that date, the court awarded her permanent partial disability benefits measured by her lost earning power. The court stated that Armstrong met her burden of proving a permanent impairment "through the medical report of Dr. Gammel, who opined that [Armstrong] could work four hours per day in the light demand category."

For Armstrong's lost earning power, the court found that she "suffered a 75 percent loss of earning capacity as opined by . . . Stricklett." The court said that it "simply believes that [Armstrong] is capable of doing more than she led her doctors to believe." In particular, the court noted reports from emergency room doctors who said that Armstrong showed no signs of stress while using her cell phone but "'cries out in pain with any motion that we do.'" The court also said that it observed Armstrong during trial and noticed that she manipulated papers and moved her limbs without apparent difficulty.

Finally, the court denied Armstrong a waiting-time penalty, attorney fees, and interest under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2014), because a reasonable controversy existed. Armstrong argued that the State did not have evidence of a reasonable controversy when it stopped making TTD payments in April 2012. The court agreed, but found that the State had presented such evidence at trial.

## ASSIGNMENTS OF ERROR

Armstrong assigns that the compensation court erred by (1) finding that Armstrong suffered a 75-percent loss of earning capacity, because "a 20-hour workweek is not suitable gainful employment as a matter of law"; (2) finding that Armstrong was not entitled to a waiting-time penalty, attorney fees, and interest; and (3) failing to award mileage expenses for all of Armstrong's travel to injury-related medical appointments.

## STANDARD OF REVIEW

[1] A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the compensation court do not support the order or award.[1]

[2,3] On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[2] In workers' compensation cases, we determine questions of law.[3]

## ANALYSIS

### Partial Disability

Armstrong argues that an injured worker with a permanent disability that prevents her from working "full-time" is, as a matter of law, totally disabled.[4] According to Armstrong, only "full-time, 40-hour per week employment positions" may be considered when determining a permanently disabled worker's lost earning power.[5] She frames the issue as follows: "[C]an a worker who is permanently restricted to working 4-hour

---

[1] Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014).

[2] *Money v. Tyrrell Flowers*, 275 Neb. 602, 748 N.W.2d 49 (2008).

[3] See *id*.

[4] Brief for appellant at 24.

[5] *Id*.

days, resulting in a 20-hour workweek, be less than perma-nently and totally disabled pursuant to Nebraska Workers' Compensation law?"[6]

The State contends that Armstrong "confuses wages with earning power."[7] Additionally, the State argues that Armstrong's interpretation would lead to "absurd results," such as an injured worker with a 39-hour workweek restriction being deemed totally disabled solely on that ground.[8] In response, Armstrong says that she "does not suggest that the Court adopt a bright-line rule with respect to how many hours worked per week constitutes full-time or part-time employment."[9] Instead, she appears to argue that she is totally disabled unless she can earn "wages similar" to those she would earn in a 40-hour workweek.[10]

Neb. Rev. Stat. § 48-121 (Reissue 2010) provides compensation for three categories of job-related disabilities.[11] Subsection (1) sets the amount of compensation for total disability; subsection (2) sets the amount of compensation for partial disability, except in cases covered by subsection (3); and subsection (3) sets out "schedule" injuries to specified parts of the body with compensation established therefor.[12]

[4] The compensation court awarded Armstrong permanent partial disability benefits under § 48-121(2), which are measured by 66⅔ percent of the difference between weekly wages at the time of the injury and earning power thereafter. As used in § 48-121(2), earning power is not synonymous with wages.[13] It includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform

---

[6] *Id.* at 13.

[7] Brief for appellee at 14.

[8] *Id.* at 15.

[9] Reply brief for appellant at 7.

[10] *Id.*

[11] *Rodgers v. Nebraska State Fair*, 288 Neb. 92, 846 N.W.2d 195 (2014).

[12] *Id.*

[13] *Davis v. Goodyear Tire & Rubber Co.*, 269 Neb. 683, 696 N.W.2d 142 (2005).

the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he or she is engaged or for which he or she is fitted.[14]

[5] Armstrong claims that she is permanently totally disabled. Total disability does not mean a state of absolute helplessness.[15] It means that because of an injury (1) a worker cannot earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform or (2) the worker cannot earn wages for work for any other kind of work which a person of his or her mentality and attainments could do.[16]

The thrust of Armstrong's argument is that because her weekly wage for permanent disability benefits must be calculated on a 40-hour workweek, her earning power is necessarily zero if her disability prevents her from working full time. Generally, Neb. Rev. Stat. § 48-126 (Reissue 2010) provides that a worker's weekly wage is determined by averaging the earnings from the 26 weeks preceding the injury. But in cases of permanent disability, § 48-121(4) provides that if the worker's wages were paid by the hour, weekly wages must be computed on a minimum 40-hour workweek. Armstrong urges us to read "earning power" under § 48-121(2) "in conjunction with" the method of calculating weekly wage under § 48-121(4).[17]

We have acknowledged that the plain text of § 48-121(4) sometimes requires "distortion" in the calculation of a permanently disabled worker's weekly wage.[18] For example, we noted in *Mueller v. Lincoln Public Schools*[19] that § 48-121(4) required the claimant's "workweek be extended to 40 hours," even though she only worked 37½ hours per week before

---

[14] *Id.*

[15] *Money v. Tyrrell Flowers, supra* note 2.

[16] *Id.*

[17] Brief for appellant at 23.

[18] *Mueller v. Lincoln Public Schools*, 282 Neb. 25, 30, 803 N.W.2d 408, 411 (2011).

[19] *Id.*

her injury. Similarly, we held in *Becerra v. United Parcel Service*[20] that the compensation court did not err by calculating the permanently disabled claimant's weekly wage on a 40-hour workweek, even though the claimant worked 17 hours per week before his injury. At issue in *Becerra* was the claimant's vocational rehabilitation priority under Neb. Rev. Stat. § 48-162.01(3) (Reissue 2010), which a vocational counselor testified depended on the claimant's weekly wage.

[6] We conclude that a worker is not, as a matter of law, totally disabled solely because the worker's disability prevents him or her from working full time. While § 48-121(4) requires a permanently disabled hourly worker's weekly wage to be calculated on a 40-hour workweek, "wages and earning capacity are not the same thing."[21] Compensation for partial disability under § 48-121(2) is a function of the worker's "wages" and "earning power." For a permanently disabled hourly worker, § 48-121(4) requires that wages be calculated based on a 40-hour workweek. But it does not mandate that earning power be deemed zero solely because the worker is unable to work full time.

Of course, a worker's inability to work full time is relevant to the worker's earning power. For example, we held in *Giboo v. Certified Transmission Rebuilders*[22] that the compensation court erred by relying on an earning power report that failed to consider the impact of a 6-hour workday restriction. We noted the numerical truism that, all else being equal, a person who works only 6 hours per day will earn less than a person who works 8 hours per day. But we also explained that such a restriction "reduce[s] a person's earning capacity by virtue of the fact that it reduces the number of jobs available to that individual."[23]

---

[20] *Becerra v. United Parcel Service*, 284 Neb. 414, 822 N.W.2d 327 (2012).

[21] *Kam v. IBP, inc*., 12 Neb. App. 855, 867, 686 N.W.2d 631, 641 (2004). See, also, *Straub v. City of Scottsbluff*, 280 Neb. 163, 784 N.W.2d 886 (2010); *Davis v. Goodyear Tire & Rubber Co*., *supra* note 13.

[22] *Giboo v. Certified Transmission Rebuilders*, 275 Neb. 369, 746 N.W.2d 362 (2008).

[23] *Id*. at 388, 746 N.W.2d at 377.

[7,8] Furthermore, a worker may be totally disabled even though she is able to work in some limited capacity. Under the "odd-lot" doctrine, total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market.[24] A worker may be totally disabled for all practical purposes, despite being able to find trivial, occasional employment under rare conditions at small remuneration.[25] For example, we have affirmed a finding of total disability where the claimant had a "low tolerance for prolonged sitting, standing, or walking"[26]; where the claimant could engage in activity for only 30 minutes before needing to rest[27]; and where the claimant worked 16 to 18 hours per week only "at the sufferance of an employer willing to provide the extra supervision and who would tolerate his aberrational behavior."[28] But we have noted that "not all part-time work . . . is trivial."[29]

[9,10] Whether a claimant has suffered a loss of earning power or is totally disabled are questions of fact.[30] Here, Armstrong assigns that the compensation court erred

---

[24] *Lovelace v. City of Lincoln*, 283 Neb. 12, 14, 809 N.W.2d 505, 507 (2012). Cf., *Money v. Tyrrell Flowers, supra* note 2; *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003); *Frauendorfer v. Lindsay Mfg. Co.*, 263 Neb. 237, 639 N.W.2d 125 (2002); *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992).

[25] See, *McDonald v. Lincoln U-Cart Concrete Co.*, 232 Neb. 960, 442 N.W.2d 892 (1989); *Heironymous v. Jacobsen Transfer*, 215 Neb. 209, 337 N.W.2d 769 (1983); *Craig v. American Community Stores Corp.*, 205 Neb. 286, 287 N.W.2d 426 (1980); *Brockhaus v. L. E. Ball Constr. Co.*, 180 Neb. 737, 145 N.W.2d 341 (1966); *Wheeler v. Northwestern Metal Co.*, 175 Neb. 841, 124 N.W.2d 377 (1963).

[26] *Frauendorfer v. Lindsay Mfg. Co., supra* note 24, 263 Neb. at 252, 639 N.W.2d at 139.

[27] *Luehring v. Tibbs Constr. Co.*, 235 Neb. 883, 457 N.W.2d 815 (1990).

[28] *McDonald v. Lincoln U-Cart Concrete Co., supra* note 25, 232 Neb. at 969, 442 N.W.2d at 899.

[29] *Id.*

[30] See, *Kim v. Gen-X Clothing*, 287 Neb. 927, 845 N.W.2d 265 (2014); *Stacy v. Great Lakes Agri Mktg.*, 276 Neb. 236, 753 N.W.2d 785 (2008).

by finding that she had a 75-percent loss of earning power because "a 20-hour workweek is not suitable gainful employment as a matter of law." Having rejected this assignment, we do not consider any alleged deficiencies in Stricklett's report or the sufficiency of the evidence to support the court's factual finding that Armstrong suffered a 75-percent loss of earning power. For an appellate court to consider an alleged error, a party must specifically assign and argue it.[31]

## Waiting-Time Penalty, Attorney Fees, and Interest

Armstrong argues that she is entitled to a waiting-time penalty, attorney fees, and interest because of the State's failure to pay TTD benefits within 30 days of notice of her disability. The compensation court found that the State "did not have a basis for the discontinuation of [Armstrong's] TTD benefits at the time it did so." But the court denied Armstrong a waiting-time penalty because the State "present[ed] evidence at trial that justified its discontinuation of benefits." Armstrong contends that a reasonable controversy must exist at the time the employer denies benefits.

[11] Under § 48-125(1)(b), an employer must pay a 50-percent waiting-time penalty if (1) the employer fails to pay compensation within 30 days of the employee's notice of disability and (2) no reasonable controversy existed regarding the employee's claim for benefits.[32] When compensation is so delayed and the employee receives an award from the compensation court, the employee is also entitled to attorney fees and interest.[33] Although "reasonable controversy" appears nowhere in the text of § 48-125, the phrase has been part of our waiting-time penalty jurisprudence for more than 90 years.[34]

---

[31] *deNouri & Yost Homes v. Frost*, 289 Neb. 136, 854 N.W.2d 298 (2014).

[32] See *Manchester v. Drivers Mgmt.*, 278 Neb. 776, 775 N.W.2d 179 (2009).

[33] § 48-125(2)(a) and (3). See *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

[34] *Behrens v. American Stores Packing Co.*, 234 Neb. 25, 449 N.W.2d 197 (1989) (citing *Updike Grain Co. v. Swanson*, 104 Neb. 661, 178 N.W. 618 (1920)).

[12,13] Under the test we announced in *Mendoza v. Omaha Meat Processors*,[35] for the purpose of § 48-125, a reasonable controversy exists if (1) there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court about an aspect of an employee's claim, which conclusions affect allowance or rejection of an employee's claim, in whole or in part.[36] Whether a reasonable controversy exists under § 48-125 is a question of fact.[37]

[14] We have explained that "[u]nder the *Mendoza* test, when there is some conflict in the medical testimony adduced at trial, reasonable but opposite conclusions could be reached by the compensation court."[38] And we have held that a reasonable controversy existed even though the evidence showing the controversy was unknown at the time the employer refused benefits. In *Dawes v. Wittrock Sandblasting & Painting*,[39] the claimant argued that the compensation court erred by not awarding him a waiting-time penalty. We disagreed:

> Here, [the employer] presented expert medical testimony that would have supported a finding that [the claimant's]

[35] *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987).

[36] Cf., *Manchester v. Drivers Mgmt., supra* note 32; *Stacy v. Great Lakes Agri Mktg., supra* note 30; *Bixenmann v. H. Kehm Constr.*, 267 Neb. 669, 676 N.W.2d 370 (2004); *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000); *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999).

[37] *Manchester v. Drivers Mgmt., supra* note 32.

[38] *McBee v. Goodyear Tire & Rubber Co., supra* note 36, 255 Neb. at 908-09, 587 N.W.2d at 692. See, *U S West Communications v. Taborski*, 253 Neb. 770, 572 N.W.2d 81 (1998); *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996). See, also, *Vonderschmidt v. Sur-Gro*, 262 Neb. 551, 635 N.W.2d 405 (2001).

[39] *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved in part on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005).

condition was not the result of an accident arising out of and in the course of employment. . . . While this opinion was not adduced until after the denial of benefits, it is evidence that [the employer] had an actual basis in law or fact for denying [the claimant's] claim.[40]

So, we concluded that a reasonable controversy existed based on testimony unknown at the time the employer denied benefits.

[15] Ordinarily, when an appellate court judicially construes a statute and that construction does not evoke an amendment, we presume that the Legislature acquiesced in the court's determination of the Legislature's intent.[41] The Legislature has amended § 48-125 four times since we decided *Dawes*.[42] But none of the amendments are relevant to our reasoning. Because the Legislature did not materially change the language of § 48-125, our holding in *Dawes*—that a reasonable controversy can be shown by evidence adduced at trial but unknown at the time benefits were denied—continues to apply.

Armstrong contends that *Dawes* discourages the prompt payment of benefits by giving the employer an incentive to delay. As we noted in *Dawes*, the purpose of the waiting-time penalties in § 48-125 is to "require[] that employe[r]s and insurers promptly handle and decide claims."[43] We do not believe that *Dawes* is inconsistent with this purpose. If an employer chooses to ignore the employee's notice of disability, it does so at its own peril. Should the employee's claim

---

[40] *Dawes v. Wittrock Sandblasting & Painting, supra* note 39, 266 Neb. at 554, 667 N.W.2d at 191 (citing *Mendoza v. Omaha Meat Processors, supra* note 35).

[41] See *Lagemann v. Nebraska Methodist Hosp.*, 277 Neb. 335, 762 N.W.2d 51 (2009).

[42] See, 2011 Neb. Laws, L.B. 151, § 1; 2009 Neb. Laws, L.B. 630, § 3; 2005 Neb. Laws, L.B. 238, § 4, and L.B. 13, § 5.

[43] *Dawes v. Wittrock Sandblasting & Painting, supra* note 40, 266 Neb. at 553, 667 N.W.2d at 191. See, also, *Gaston v. Appleton Elec. Co.*, 253 Neb. 897, 573 N.W.2d 131 (1998); *Roth v. Sarpy Cty. Highway Dept.*, 253 Neb. 703, 572 N.W.2d 786 (1998).

be noncontroversial, the employer is subject to the significant waiting-time penalties in § 48-125. So, employers and insurers have an incentive to investigate all claims and pay noncontroversial claims promptly to avoid a penalty.

Armstrong concedes that the evidence produced at trial showed the existence of a reasonable controversy. We therefore affirm the court's denial of a waiting-time penalty, attorney fees, and interest based on the State's failure to pay benefits within 30 days of notice of Armstrong's disability.

## Mileage Expenses

Armstrong argues that the court "overlooked" some of her mileage expenses.[44] The court received two documents—exhibits 22 and 53—in which Armstrong computed the mileage of trips to various medical providers. Exhibit 22 records mileage for trips made between July 28, 2012, and November 8, 2013. Exhibit 53 records trips made from November 8, 2013, to February 7, 2014. The court awarded all of the mileage expenses in exhibit 53, but did not mention exhibit 22. Armstrong requests that we remand the cause so that the court may consider the mileage in exhibit 22. The State "does not dispute that the trial [c]ourt overlooked Exhibit 22."[45]

[16] Under Neb. Rev. Stat. § 48-120 (Reissue 2010), an employer is liable for all reasonable medical, surgical, and hospital expenses required by the nature of the injury which will help restore the employee to health and employment. Because § 48-120 makes the employer liable for reasonable medical and hospital services, we have held that the employer must also pay the cost of travel incident to and reasonably necessary for obtaining these services.[46] This rule is firmly established.[47]

---

[44] Brief for appellant at 40.

[45] Brief for appellee at 21.

[46] *Pavel v. Hughes Brothers, Inc*., 167 Neb. 727, 94 N.W.2d 492 (1959); *Newberry v. Youngs*, 163 Neb. 397, 80 N.W.2d 165 (1956). See, also, *Hoffart v. Fleming Cos*., 10 Neb. App. 524, 634 N.W.2d 37 (2001).

[47] *Hoffart v. Fleming Cos*., *supra* note 46.

We agree that the court overlooked exhibit 22. Exhibits 22 and 53 contain mileage for trips to the same providers for the same services, such as mileage to and from occupational therapy. It is not apparent why the court would award mileage expenses for Armstrong's occupational therapy on November 13, 2013, documented in exhibit 53, but not her trip to occupational therapy on November 8, 2013, documented in exhibit 22. We therefore direct the court to consider on remand which of the trips described in exhibit 22, if any, the State should pay.

## CONCLUSION

We affirm the compensation court's finding that Armstrong is permanently partially disabled and has suffered a 75-percent loss of earning capacity. A worker is not, as a matter of law, totally disabled solely because she is unable to work full time. We also conclude that the court did not err by denying Armstrong a waiting-time penalty, attorney fees, and interest under § 48-125. But we conclude that the court failed to consider the mileage expenses detailed in exhibit 22. We therefore remand the cause and direct the court to consider exhibit 22 and determine the mileage of the trips, if any, the State should pay.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

HEAVICAN, C.J., participating on briefs.