Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/20/2018 09:09 AM CDT

Keith T. Dragon, appellant, v. The Cheesecake
Factory and its workers' compensation insurer,
Indemnity Insurance Company of
North America, appellees.

___ N.W.2d ___

Filed July 20, 2018.    No. S-17-891.

1. **Workers' Compensation: Statutes: Appeal and Error.** The meaning of a statute is a question of law, and an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.
2. **Workers' Compensation: Appeal and Error.** Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.
3. **Legislature: Statutes: Time.** Generally, legislation that is passed takes effect 3 calendar months after the Legislature adjourns unless the Legislature evidences otherwise.
4. **Statutes: Time.** Statutes covering substantive matters in effect at the time of the transaction or event govern, not later enacted statutes. But where there has been an amendment to a statute which was a procedural change and not a substantive change, upon the effective date of the amendment, it is binding upon a tribunal.
5. ____: ____. Procedural amendments to statutes are ordinarily applicable to pending cases, while substantive amendments are not.
6. **Statutes: Words and Phrases.** A substantive amendment is one that creates a right or remedy that did not previously exist and which, but for the creation of the substantive right, would not entitle one to recover. A procedural amendment, on the other hand, simply changes the method by which an already existing right is exercised.
7. **Limitations of Actions: Statutes.** Laws prescribing the time within which particular rights may be enforced generally relate to remedies only and not substantive rights.

8. **Workers' Compensation: Statutes.** 2018 Neb. Laws, L.B. 953, is a procedural amendment to Neb. Rev. Stat. § 48-139(4) (Cum. Supp. 2016).
9. **Workers' Compensation: Time.** The reasonable controversy doctrine has long been applied to excuse waiting-time penalties for delayed benefit payments under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016).
10. \_\_\_\_: \_\_\_\_. The reasonable controversy doctrine has no application to late-payment penalties under Neb. Rev. Stat. § 48-139(4) (Cum. Supp. 2016).
11. **Attorney Fees.** If an attorney seeks a fee for his or her client, that attorney should introduce at least an affidavit showing a list of the services rendered, the time spent, and the charges made.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Order vacated in part and in part reversed, and cause remanded with directions.

Brynne E. Holsten Puhl, of Atwood, Holsten, Brown, Deaver & Spier Law Firm, P.C., L.L.O., for appellant.

Marc N. Middleton, of Adelson, Testan, Brundo, Novell & Jimenez, and David A. Castello for appellees.

Danny C. Leavitt for amicus curiae Nebraska Association of Trial Attorneys.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ., and Strong, District Judge.

Stacy, J.
In this workers' compensation case, the parties reached a lump-sum settlement and filed a verified release with the court using the process set out in Neb. Rev. Stat. § 48-139(3) and (4) (Cum. Supp. 2016). The employer did not pay the amounts owed under the settlement within 30 days after the release was filed, and the employee moved for late payment penalties under § 48-139(4). The Workers' Compensation Court overruled the motion and dismissed the employee's petition with prejudice. The employee appealed.

While the case was pending on appeal, the Legislature amended the process for finalizing lump-sum settlements under

§ 48-139(4). Because we conclude this recent amendment is procedural in nature, we apply it to this pending matter.[1] Doing so, we find the employee is entitled to a late payment penalty, and to that extent only we vacate the order of dismissal with prejudice, reverse the decision of the Workers' Compensation Court, and remand the cause with directions. In all other respects, we affirm.

BACKGROUND

Keith T. Dragon worked as a dishwasher for The Cheesecake Factory in Omaha, Nebraska. On February 9, 2017, Dragon filed a petition for workers' compensation benefits, alleging he was injured in the course and scope of his employment. The parties agreed to settle Dragon's claim for a lump-sum payment of $5,000. Both parties were represented by counsel, and they agreed to use the verified release procedure under § 48-139(3) rather than seek court approval of their settlement.[2]

On May 1, 2017, the employer filed with the Workers' Compensation Court a verified release containing the language required by § 48-139(3), thus triggering the 30-day payment period under § 48-139(4).[3] On June 8, the employer mailed Dragon the settlement check. Thereafter, Dragon filed a motion in the Workers' Compensation Court seeking a late payment penalty of $2,500 under § 48-139(4) and an award of attorney fees under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016).

At the hearing on the motion for late payment penalties, the employer conceded the lump-sum settlement was paid more

---

[1] See *Smith v. Mark Chrisman Trucking*, 285 Neb. 826, 829 N.W.2d 717 (2013).

[2] Compare § 48-139(2) (detailing general process for court approval of lump-sum settlement), with § 48-139(3) (detailing alternative process for filing verified release to finalize lump-sum settlement).

[3] § 48-139(4) ("[a]mounts to be paid by the employer to the employee pursuant to such release shall be paid within thirty days of filing the release with the compensation court").

than 30 days after the release was filed, but it opposed the imposition of a late payment penalty on two grounds.

First, the employer argued the "reasonable controversy" doctrine[4] should preclude an award of late payment penalties, because the payment delay was the result of a reasonable dispute over child support liens. Second, the employer argued Dragon had waived any claim for a late payment penalty under § 48-139(4). This argument was based on the version of § 48-139(4) in effect at that time, which provided: "Upon making payment owed by the employer as set forth in the release, such release shall be a full and complete discharge from further liability for the employer on account of the injury . . . ." Given this statutory language, the employer argued that even though the settlement payment was made more than 30 days after the release was filed, the release sprung into effect as soon as payment was made and extinguished all claims Dragon had under the Nebraska Workers' Compensation Act, including a claim for late payment penalties or attorney fees.

The Workers' Compensation Court agreed with the employer's interpretation of § 48-139(4) and entered an order overruling Dragon's motion for a late payment penalty. In doing so, the court relied on this court's analysis in *Holdsworth v. Greenwood Farmers Co-op.*[5]

In *Holdsworth*, the lump-sum settlement payment was made 42 days after the verified release was filed and the employee moved for a 50-percent waiting-time penalty and attorney fees. When *Holdsworth* was decided, § 48-139 did not have its own late payment penalty provision, so the employee sought penalties under § 48-125 (Reissue 2010). That statute generally authorized a waiting-time penalty for "all delinquent

---

[4] See, e.g., *Armstrong v. State*, 290 Neb. 205, 209, 859 N.W.2d 541, 547 (2015).

[5] *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

payments after thirty days' notice has been given of disability or after thirty days from the entry of a final order, award, or judgment of the compensation court."[6] Section 48-125(2) authorized an employee who received a waiting-time penalty, and who also received an award, to recover reasonable attorney fees.

In *Holdsworth*, the Workers' Compensation Court awarded the employee waiting-time penalties under § 48-125 and the employer appealed. This court reversed, finding that once the verified release was filed with the compensation court pursuant to § 48-139(3), the employee effectively waived "'all rights under the Nebraska Workers' Compensation Act,'" including any rights to late payment penalties and fees the employee may have had under § 48-125.[7] A key part of this court's analysis in *Holdsworth* was the broad language required to be included in the verified release under § 48-139(3). We reasoned this broad release language was unambiguous and resulted in "a full waiver of any and all rights given to workers in the Nebraska Workers' Compensation Act," including the right to waiting-time penalties and attorney fees.[8]

After our decision in *Holdsworth*, the Legislature amended § 48-139 to specifically include a penalty provision for late payments of lump-sum settlements.[9] Thus, in 2017, when the parties in this case reached their lump-sum settlement, § 48-139(4) provided:

> A release filed with the compensation court in accordance with subsection (3) of this section shall be final and conclusive as to all rights waived in the release unless procured by fraud. Amounts to be paid by the

---

[6] § 48-125(1)(b).

[7] *Holdsworth, supra* note 5, 286 Neb. at 56, 835 N.W.2d at 36.

[8] *Id.*

[9] See 2014 Neb. Laws, L.B. 961, § 11.

employer to the employee pursuant to such release shall be paid within thirty days of filing the release with the compensation court. Fifty percent shall be added for payments owed to the employee if made after thirty days after the date the release is filed with the compensation court. Upon making payment owed by the employer as set forth in the release, such release shall be a full and complete discharge from further liability for the employer on account of the injury, including future medical, surgical, or hospital expenses, unless such expenses are specifically excluded from the release, and the court shall enter an order of dismissal with prejudice as to all rights waived in the release.

The Workers' Compensation Court analyzed this statutory language and concluded it did "not cure the problem illuminated by Holdsworth." The court reasoned that under *Holdsworth*, once the broad statutory release language becomes effective, it results in a full and complete discharge from all liability under the act, including a claim for late payment penalties and attorney fees. The Workers' Compensation Court observed that because amendments to § 48-139(4) made the release effective "'[u]pon making payment . . . as set forth in the release . . . ,'" the release in this case became effective once the employer paid Dragon. Thus, even though the settlement payment was late, it served to discharge the employer from all liability, including liability for late payment penalties and attorney fees.

The Workers' Compensation Court thus overruled Dragon's motion for penalties and attorney fees and dismissed his petition with prejudice. Dragon timely appealed, and we moved the case to our docket on our own motion[10] to address the impact of the 2014 amendment to § 48-139(4).

---

[10] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

## ASSIGNMENT OF ERROR

Dragon assigns the Workers' Compensation Court erred in ruling he was not entitled to a late payment penalty under the 2014 version of § 48-139(4) and attorney fees under § 48-125.

## STANDARD OF REVIEW

[1] The meaning of a statute is a question of law, and an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.[11]

[2] Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.[12]

## ANALYSIS

We moved this case to our docket to address the impact of the 2014 amendments to § 48-139(4), but we begin our analysis by addressing a more recent amendment to that section.

## L.B. 953

While this appeal was pending, the Legislature again amended § 48-139(4). Specifically, 2018 Neb. Laws, L.B. 953, made the following additions/changes to § 48-139(4):

> Upon the entry of an order of dismissal with prejudice, a ~~A~~ release filed with the compensation court in accordance with subsection (3) of this section shall be final and conclusive as to all rights waived in the release unless procured by fraud. Amounts to be paid by the employer to the employee pursuant to such release shall be paid within thirty days of filing the release with the compensation court. Fifty percent shall be added for

---

[11] *Interiano-Lopez v. Tyson Fresh Meats*, 294 Neb. 586, 883 N.W.2d 676 (2016).

[12] *Greenwood v. J.J. Hooligan's*, 297 Neb. 435, 899 N.W.2d 905 (2017).

payments owed to the employee if made after thirty days after the date the release is filed with the compensation court. Upon making payment owed by the employer as set forth in the release and upon the entry of an order of dismissal with prejudice, as to all rights waived in the release, such release shall be a full and complete discharge from further liability for the employer on account of the injury, including future medical, surgical, or hospital expenses, unless such expenses are specifically excluded from the release, and the court shall enter an order of dismissal with prejudice as to all rights waived in the release.

In explaining the reason for the amendment, the introducer of L.B. 953 stated:

LB 953 also addresses a recent Workers' Compensation Court's decision regarding the enforceability of late payment penalties. Currently, Neb. Rev. Stat. § 48-139(4) permits a fifty percent penalty for late payments to the employee, but the Workers' Compensation Court has found that the employee has already waived his or her rights to enforce this. LB 953 corrects this issue by making the entry of an order of dismissal a prerequisite to the discharge of a defendant from liability.[13]

As applicable to the issues before us in this appeal, L.B. 953 changed the point at which a verified release becomes effective under § 48-139(4). Before passage of L.B. 953, a verified release was effective upon payment of sums owed under the release. After L.B. 953, a verified release becomes effective once payment is made and the court enters an order of dismissal with prejudice.

[3] Generally, legislation that is passed takes effect 3 calendar months after the Legislature adjourns unless the

---

[13] Introducer's Statement of Intent, L.B. 953, 105th Leg., 2d Sess. (Feb. 5, 2018).

Legislature evidences otherwise.[14] The Legislature's 2018 session adjourned on April 18, 2018, so L.B. 953 has taken effect and we must decide, as a threshold matter, whether the provisions of L.B. 953 apply to this case. The necessary inquiry is whether the changes made by L.B. 953 to § 48-139(4) were procedural or substantive in nature.[15]

[4,5] It is a well-established principle that statutes covering substantive matters in effect at the time of the transaction or event govern, not later enacted statutes.[16] But where there has been an amendment to a statute which was a procedural change and not a substantive change, upon the effective date of the amendment, it is binding upon a tribunal.[17] Thus, procedural amendments to statutes are ordinarily applicable to pending cases, while substantive amendments are not.[18]

[6] We have explained that a substantive amendment is one that creates a right or remedy that did not previously exist and which, but for the creation of the substantive right, would not entitle one to recover.[19] A procedural amendment, on the other hand, simply changes the method by which an already existing right is exercised.[20]

In *Jackson v. Branick Indus.*,[21] we applied these principles to determine whether an amendment to a workers' compensation subrogation statute[22] was substantive or procedural in nature.

---

[14] *Smith, supra* note 1, citing Neb. Const. art. III, § 27.

[15] See, *Smith, supra* note 1; *Jackson v. Branick Indus.*, 254 Neb. 950, 581 N.W.2d 53 (1998).

[16] *Id.*

[17] *Jackson, supra* note 15; *Behrens v. American Stores Packing Co.*, 228 Neb. 18, 421 N.W.2d 12 (1988).

[18] *Smith, supra* note 1.

[19] See, *id.*; *Jackson, supra* note 15; *Behrens, supra* note 17.

[20] *Smith, supra* note 1.

[21] *Jackson, supra* note 15.

[22] Compare Neb. Rev. Stat. § 48-118 (Reissue 1993), with § 48-118 (Cum. Supp. 1996).

At the time of the employee's injury in *Jackson*, § 48-118 gave the employer and its insurer a subrogation interest against a third-party tort-feasor in the amount of any compensation paid to or on behalf of the employee. This was construed to entitle the employer to "dollar-for-dollar" subrogation recovery from a third-party settlement.[23] However, by the time the employee settled with a third party, § 48-118 had been amended to allow the court to make a "'fair and equitable'" distribution of the third-party settlement as between the employee and the employer or its insurer.[24]

The district court in *Jackson* found the amendment was procedural, and thus made an equitable distribution of the third-party settlement proceeds. The employer appealed, and this court reversed, finding instead that the amendment was substantive in nature. We reasoned:

> [The amendment] did not merely change the way in which the employer's right to subrogation would be exercised, it actually changed the nature of the subrogation interest itself. The 1994 amendment to § 48-118 injected an element of equity into statutory subrogation where one was not present before and is, therefore, a substantive change in the law.[25]

Unlike the amendment considered in *Jackson*, the provisions of L.B. 953 changed neither the nature of the late payment penalty under § 48-139(4) nor the manner in which such a penalty is calculated. Instead, L.B. 953 merely changed the point in the settlement process when a verified release becomes effective.

At the time we decided *Holdsworth*, the verified release became effective once it was filed with the Workers' Compensation Court. The 2014 amendments to § 48-139(4) made the verified release effective "[u]pon making payment

---

[23] *Id.* at 957, 581 N.W.2d at 57.

[24] *Id.* at 953, 581 N.W.2d at 55.

[25] *Id.* at 960-61, 581 N.W.2d at 59.

owed by the employer as set forth in the release . . . ." And
L.B. 953 makes the verified release effective once payment is
made and the court enters an order of dismissal with prejudice.

[7,8] We have recognized that "[l]aws prescribing the time
within which particular rights may be enforced generally
relate to remedies only and not substantive rights."[26] In this
case, the pertinent provisions of L.B. 953 merely changed the
point in time when the verified release becomes effective in
the lump-sum settlement process. We therefore conclude that
L.B. 953 is a procedural amendment to § 48-139(4) and is
applicable to this pending appeal.

### Dragon Is Entitled to Late Payment Penalty

Under § 48-139(4) as amended by L.B. 953, Dragon did not
waive his right to a late payment penalty. It remains true under
*Holdsworth* that once the verified release becomes effective,
it results in a full and complete discharge from all liability
under the Nebraska Workers' Compensation Act, including
a claim for late payment penalties and attorney fees.[27] But
post-L.B. 953, the verified release signed by Dragon does not
become effective until the Workers' Compensation Court files
an order of dismissal with prejudice.[28] Applying the current
version of § 48-139(4), we find Dragon is entitled to a late
payment penalty as a matter of law. Thus, it is contrary to law
to conclude the release became effective upon the employer's
payment of the settlement sums, and we must reverse the
Workers' Compensation Court's finding to the contrary, in
light of the change in the law.

---

[26] *Harris v. Omaha Housing Auth.*, 269 Neb. 981, 986, 698 N.W.2d 58, 63-64 (2005).

[27] See *Holdsworth, supra* note 5.

[28] See, also, Workers' Comp. Ct. R. of Proc. 47J (2018) (when order of dismissal is required under § 48-139(4), parties must file receipt, satisfaction, or joint stipulation for dismissal setting forth amount(s) received by employee from employer).

We thus vacate the order of dismissal with prejudice, reverse the finding that Dragon waived his right to late payment penalties under § 48-139(4), and remand the cause with directions to award such penalty based on the existing record.

### Reasonable Controversy Doctrine Does Not Apply

The employer argues that even if § 48-139(4) authorizes a late payment penalty, it should be exempt from paying the penalty, because a "reasonable controversy" existed. Specifically, the employer claims it delayed paying the settlement sums in this case because it was waiting for information on whether and how to pay child support liens. The record is undisputed that the parties had notice of the child support liens prior to the time they reached a lump-sum settlement.

[9,10] The reasonable controversy doctrine has long been applied to excuse waiting-time penalties for delayed benefit payments under § 48-125.[29] The employer urges us to extend the doctrine to excuse late payment penalties for delayed lump-sum settlement payments under § 48-139(4). We decline the invitation and conclude the reasonable controversy doctrine has no application to late payment penalties under § 48-139(4).

In 1920, this court recognized an exception to waiting-time penalties imposed for delayed benefit payments when there is a reasonable controversy over entitlement to workers' compensation benefits.[30] We reasoned:

It was not intended by this provision of the statute that an employer should comply with every demand of the employee at his peril, and in every case, when it is later

---

[29] *Armstrong, supra* note 4 (recognizing "reasonable controversy" doctrine has been part of our waiting-time penalty jurisprudence under § 48-125 for more than 90 years).

[30] *Updike Grain Co. v. Swanson*, 104 Neb. 661, 178 N.W. 618 (1920) (superseded by statute as stated in *Lagemann v. Nebraska Methodist Hosp.*, 277 Neb. 335, 762 N.W.2d 51 (2009)).

proved that the employer was mistaken as to his liability, that he should be required to increase the award 50 per cent . . . and be penalized in that amount. The statute was not intended to prevent the employer from having a fair opportunity to be heard and to have his just controversies tried . . . .[31]

Since that time, we have consistently held that an employer is not liable for the waiting-time penalty under § 48-125 when there is a reasonable controversy over entitlement to benefits.[32] In that context, we have explained that a reasonable controversy exists if (1) there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court about an aspect of an employee's claim, which conclusions affect allowance or rejection of an employee's claim, in whole or in part.[33]

We have not previously addressed whether the reasonable controversy exception applies to late payment penalties for lump-sum settlement payments made more than 30 days after the verified release is filed under § 48-139. But given the rationale for the doctrine, we see no compelling reason to extend the doctrine to excuse penalties for delayed payments of lump-sum settlements.

The waiting-time penalty provisions of § 48-125 are designed to encourage prompt payment of benefits[34] and to

---

[31] *Id.* at 665, 178 N.W. at 619.

[32] See *Armstrong, supra* note 4.

[33] *Id.*

[34] *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005); *Hollandsworth v. Nebraska Partners*, 260 Neb. 756, 619 N.W.2d 579 (2000).

encourage employers and insurers to promptly handle and decide disputed claims.[35] We have said that to avoid waiting-time penalties under 48-125, an employer must have an actual basis in law or fact for disputing the claim and refusing compensation.[36]

But once an employer and an employee reach a lump-sum settlement agreement, there is no remaining factual or legal dispute over the claim and thus no reason to refuse to pay the agreed-upon settlement amount.[37] If, as in this case, there are concerns about the enforceability of liens against the proceeds of a lump-sum settlement, parties should endeavor to resolve such issues before they file the verified release and trigger the 30-day payment period under § 48-139(4).

For these reasons, we find the reasonable controversy exemption is inapplicable to late payment penalties under § 48-139(4) and does not exempt the employer from paying such penalties in this case.

## ATTORNEY FEES

Finally, Dragon argues it was error for the Workers' Compensation Court to deny his request for attorney fees under § 48-125. We find no abuse of discretion in denying attorney fees on this record.

[11] If an attorney seeks a fee for his or her client, that attorney should introduce at least an affidavit showing a list of the services rendered, the time spent, and the charges made.[38] The record on appeal contains no such evidence supporting Dragon's request for attorney fees. We thus are unable to

---

[35] See *Armstrong, supra* note 4; *Dawes, supra* note 34.

[36] *Dawes, supra* note 34, citing *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987).

[37] See § 48-139.

[38] *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011).

address this assignment of error,[39] and we express no opinion on Dragon's argument that an employee who is entitled to a late payment penalty under § 48-139(4) may also recover attorney fees under § 48-125.

## CONCLUSION

For the foregoing reasons, we vacate the order of dismissal with prejudice, reverse the finding that Dragon waived his right to late payment penalties under § 48-139(4), and remand the cause with directions to award such penalties based on the existing record. In all other respects, we affirm the decision of the Workers' Compensation Court.

ORDER VACATED IN PART AND IN PART REVERSED,
AND CAUSE REMANDED WITH DIRECTIONS.

---

[39] See, *Centurion Stone of Neb. v. Whelan*, 286 Neb. 150, 835 N.W.2d 62 (2013); *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012) (holding appellant must present record supporting errors assigned; absent such record, appellate court will affirm lower court's decision).